JS-6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ERICK ESCAMILLA MENJIVAR, an individual,<br><br>　　　　　　　　　Plaintiff,<br>　　v.<br><br>AIR CANADA, a business entity of unknown form; and DOES 1 through 20, inclusive.<br><br>　　　　　　　　　Defendants. | Case No.: 2:24-cv-07138-MEMF-MAR<br><br>**ORDER GRANTING MOTION TO REMAND [ECF NO. 15]** |

　　Before the Court is the Motion to Remand filed by Plaintiff Luis Erick Escamilla Menjivar. ECF No. 15. For the reasons stated herein, the Court hereby GRANTS the Motion to Remand.[1]

///

///

---

[1] On January 8, 2025, the Court deemed this matter appropriate for resolution without oral argument and vacated the hearing. ECF No. 25; *see also* C.D. Cal. L.R. 7-15.

I. **Background**

A. Factual Allegations[2]

Plaintiff Luis Erick Escamilla Menjivar is a former employee of Defendant Air Canada, a business entity. *See* Compl. ¶ 3. Escamilla[3] is of Hispanic origin and speaks both English and his native Spanish language. *Id.* ¶ 17. On or about June 4, 2018, Air Canada hired Escamilla to work as a customer service agent where he assisted Air Canada's passengers with the boarding process. *Id.* ¶ 16. In July 2021, after learning that non-Hispanic employees that he had seniority over received pay raises, Escamilla requested a similar raise from his manager, Lynne Burrow. *Id.* ¶ 18. Burrow told Escamilla she would investigate the matter, but ignored his requests. *Id.* Burrow told him she would speak to Air Canada's Human Resources ("HR") after Escamilla asked again a few weeks later. *Id.*

In August 2021, Escamilla learned that he was being passed over for a promotion. *Id.* ¶ 19. Escamilla asked Burrow the reason why he was not being promoted and Burrow told him it was because he has an accent. *Id.* Later, she added that Air Canada's refusal and failure to consider Escamilla for the position was his alleged inability to properly communicate in English. *Id.* On September 9, 2021, Escamilla learned that his wife had a miscarriage and requested time off to attend to his wife. *Id.* ¶ 20. In retaliation for taking time off, Burrow scolded him and told him he should not have taken time off because "you are not the one who had the miscarriage." *Id.*

On January 11, 2021, Escamilla was diagnosed with Covid and immediately notified Burrow, and other Air Canada personnel. *Id.* ¶ 23. Instead of providing Escamilla sufficient time off to fully recover from his symptoms, Burrow demanded that he return to work six days after he tested positive for Covid. *Id.* In June 2022, Escamilla provided Defendants notice that his wife was pregnant with a due date of August 11, 2022, and requested paternity leave from Burrow. *Id.* ¶ 28. Defendants failed to properly document and process the paternity leave paperwork, did not approve his paternity leave request, and proceeded to suspend him for ten days for excessive absences. *Id.* On

---

[2] The following factual background is derived from the allegations in Plaintiff's Complaint, ECF No. 1-2 ("Compl."), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

[3] The Court refers to Plaintiff by the surname as set forth in Plaintiff's briefing.

2

1  August 4, 2022, Defendants terminated Escamilla's employment one week before his child's due
2  date due to poor work attendance. *Id.* ¶ 29.

### B. Procedural History

On July 17, 2024, Escamilla filed a complaint in the Superior Court of the State of California for the County of Los Angeles, alleging eight causes of action: (1) Discrimination in Violation of the Fair Housing and Employment Act ("FEHA"); (2) Retaliation in Violation of FEHA; (3) Failure to Prevent Discrimination and Retaliation in Violation of FEHA; (4) Retaliation in Violation of the California Family Rights Act ("CFRA"); (5) Failure to Provide Reasonable Accommodations in Violation of FEHA; (6) Failure to Engage in a Good Faith Interactive Process in Violation of FEHA; (7) Wrongful Termination; and (8) Violation of the California Equal Pay Act. *See generally* Compl. On August 12, 2024, Escamilla added Burrow as a DOE defendant. ECF No. 1-10.

On August 22, 2024, Air Canada removed this case to the United States District Court for the Central District of California. ECF No. 1 ("Notice of Removal" or "NOR"). On October 4, 2024, Escamilla filed the instant Motion to Remand. ECF No. 15 ("Motion" or "Mot."). The Motion is fully briefed. *See* ECF Nos. 20 ("Opposition" or "Opp'n"), 22 ("Reply").

### II. Applicable Law

"Federal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (internal quotation marks omitted). Civil actions may be removed from state court if the federal court has original jurisdiction. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) ("Under the plain terms of § 1441(a), in order [to properly] remove [an] action pursuant to that provision . . . original subject-matter jurisdiction [must] lie[ ] in the federal courts."). "[A] removed case must be remanded [i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The party seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction. *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010). "The 'strong presumption against removal jurisdiction means that the defendant always the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

Removal of state action may be based on either diversity or federal question jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Diversity jurisdiction under 28 U.S.C. section 1332(a) requires that (1) all plaintiffs be of different citizenship than all defendants, and (2) the amount in controversy exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). An exception to the requirement of complete diversity is where a non-diverse defendant is fraudulently joined. *Hunter*, 582 F.3d at 1043. Joinder is fraudulent where "the plaintiff fails to state a cause of action against a resident defendant, *and the failure is obvious according to the settled rules of the state.*" *Morris*, 236 F.3d at 1067 (cleaned up). In such cases, the court ignores the citizenship of the fraudulently joined party in determining diversity. *Id.*

### III.  Discussion

Air Canda's removal was based on both federal question jurisdiction on the basis of preemption by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"), as well as diversity jurisdiction. The parties do not dispute that there exists complete diversity of citizenship between Air Canada and Escamilla, nor that the amount in controversy exceeds $75,000. Thus, the Court considers whether Section 301 provides for federal question jurisdiction and whether Burrow's citizenship should be considered for purposes of diversity jurisdiction. For the reasons discussed below, the Court finds that there is no federal question nor diversity jurisdiction.

#### A.  Section 301 Does Not Provide a Basis for Federal Question Jurisdiction

The Complaint alleges no cause of action arising under federal law. Air Canada contends however, that Section 301 preempts all claims related to Escamilla's collective bargaining agreement. *See* ECF No. 20-1, Ex. C ("CBA"). In particular, Section 301 provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ." 29 U.S.C. § 185(a). Section 301 preemption cases "require, first, an inquiry into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). "If the right exists solely as a result of CBA, then the claim is

preempted . . . If, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent' on analysis of a [CBA]." *Id.*

Air Canada does not appear to dispute that the causes of action at issue involve rights conferred by state law, not the CBA. Therefore, the Court must determine whether the rights are "substantially dependent" on the terms of the CBA. *Id.* at 1060. To do so, a court must "decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Id.* "If the latter, the claim is preempted; if the former, it is not." *Id.* Air Canada contends the following regarding Escamilla's claims:

- Escamilla's discrimination claim is preempted because the selection of the position at issue is expressly governed by the CBA;
- Escamilla's discrimination, retaliation, failure to accommodate, and wrongful termination claims, to the extent they were related to violations of the attendance policy, are preempted because the policy is subject to the provisions of the CBA; and
- Escamilla's discrimination claim for unequal pay is preempted because the rate of pay is based on the express provisions of the CBA.

Notice of Removal at 5.

In particular, Air Canada points to the CBA provisions related to "Discipline and Discharge," "Equal Treatment," "Leave of Absence and Time Off," "Rates of Pay," and "Promotion, Demotion, and Vacancies" as provisions the Court would have to interpret in order to determine whether Air Canada discriminated, retaliated against, or wrongfully terminated Escamilla. Opposition at 8–9. The Court finds that the provisions of the CBA identified do not require interpretation sufficient to find that the rights at issue are "substantially dependent" on the terms of the CBA. *Burnside*, 491 F.3d at 1053 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) (explaining that "when the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished")). Although Air Canada points to these provisions generally, it identifies no portion of the provisions in which the meaning of the provisions would be reasonably subject to dispute. For example, Air Canada notes that the "Discipline and Discharge" provision provides the criteria and procedures for such discipline, but

does not identify anything in dispute about the provision that the Court would have to interpret. Nor does Air Canada do so for any other provision it has identified in the CBA, and the Court finds the plain language of the provisions appear unambiguous.[4] At best, to the extent that Air Canada claims it took actions "based upon the provisions of the CBA," Opp'n at 7, the Court need only "look to" not "interpret" the CBA.

Here, Escamilla has not made any *allegations* based on the CBA. *Cramer v. Consolidated Freightways Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) ("The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim."). Air Canada has not pointed to more than a "hypothetical connection" between Escamilla's claims and the CBA provisions. *See Cramer*, 255 F.3d at 692. Although it argues that the allegations and the CBA provisions identified are "inextricably intertwined," it does not identify any position on any particular provision that requires the Court's interpretation. Opposition at 8; *see Cramer*, 255 F.3d at 692 ("A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility."). For example, Air Canada argues that the Court has to interpret the "Leave of Absence" provision to determine whether Escamilla was entitled to the leave he sought, but there is nothing in the provision that would plausibly give grounds to deny Escamilla's leave requests as alleged in the Complaint. The majority of leave at issue was for medical reasons, and the CBA merely states that an employee who is not eligible for disability "may, upon written request, be granted the accommodation of a medical leave of absence without pay . . . up to a maximum period of two (2) years." CBA at 70. The leave period at issue is significantly less than two years, so it is unclear what needs to be interpreted in the CBA to determine whether Air Canada discriminated, retaliated, or wrongfully terminated Escamilla due to his absences or leave requests. At most, Air Canada appears to contend that it may not be liable if its actions were otherwise contemplated by the

---

[4] This is unlike the case in *Audette*, where the Ninth Circuit noted that the settlement agreement from which the claims stemmed from "specifically refers to CBA registration procedures and provides that disputes under the agreement will be resolved under the CBA's grievance procedure." *Audette v. Int'l Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1112 (9th Cir. 1999). Air Canada also cites a number of non-binding cases that the Court finds inapposite and unpersuasive here.

CBA, but "[i]f the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Id.* at 691.

### B. Burrow's Citizenship Should Be Considered for Diversity Jurisdiction

"There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018).[5] At issue here is the latter, where a defendant must show that the non-diverse party "cannot be liable on any theory." *Grancare*, 889 F.3d at 548. "A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a heavy burden since there is a "general presumption against finding fraudulent joinder." *Id.* The analysis of whether the plaintiff can establish a cause of action against the purportedly fraudulently joined party "shares some similarities with the analysis under Rule 12(b)(6)," but is distinct and is a lower bar. *See id.* The question is not whether the plaintiff actually stated a claim upon which relief can be granted, but rather whether there is a "*possibility*" that a state court might find that the plaintiff has stated a claim. *See id.* The Ninth Circuit has explained that this distinction is based on the reasoning that jurisdictional questions should not be conflated with 12(b)(6) motions which evaluate the merits of the claims. *See id.* Thus, in some circumstances, even where the plaintiff has failed to state a claim, a non-diverse defendant might still not be fraudulently joined. *See id.*

Here, Air Canada contends that none of the existing causes of action name Burrow individually, nor could they because managers and supervisors cannot be personally liable for discrimination, retaliation, and wrongful termination. NOR at 9–11. Escamilla argues that the Complaint contains sufficient facts supporting a claim of harassment, which subjects Burrow to personal liability under California law. *See Lewis v. City of Benicia*, 224 Cal. App. 4th 1519, 1524 (2014). The parties have met and conferred regarding Escamilla's intent to amend the Complaint, including to add in a cause of action for harassment against Burrow. Motion at 9. That the cause of

---

[5] The Court notes that it does not appear that Burrow has been served with the Complaint yet, but she has been named through an amendment and is no longer a fictitious defendant. Therefore, the analysis in *Fristoe* is not applicable, as it discussed the consideration of unnamed defendants. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

action is not currently pleaded is not a reason to find that no claim could *possibly* be stated against Burrow. Rather, the Court finds that even the facts as alleged support a plausible claim of harassment. In particular, Escamilla has alleged facts that show a pattern of continuing conduct. Burrow is alleged to have "disregarded and ignored" Escamilla's multiple requests about not receiving a raise and "given the cold shoulder." Compl. ¶ 18. Burrow also told Escamilla after a month that he did not get a promotion because he had an accent, and then added that he was allegedly unable to properly communicate in English. *Id.* ¶ 19. The month after that, Burrow is alleged to have "scolded" Escamilla for taking time off for his wife's miscarriage because he "was not the one who had the miscarriage." *Id.* ¶ 20. Drawing all inferences in favor of Escamilla, these are not "isolated incidents" as Air Canada argues. Opposition at 13. They are allegations which plausibly constitute "a concerted pattern of harassment of a repeated, routine or a generalized nature." *See Lawler v. Montblanc North America LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013).

Accordingly, the Court does not find Burrow fraudulently joined.

### IV. Conclusion

For the foregoing reasons, the Court hereby GRANTS Escamilla's Motion and remands the case back to the Superior Court for the County of Los Angeles.

IT IS SO ORDERED.

Dated: January 10, 2025

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

8